872 F.2d 1025
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Doris M. GONDEK, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-1707.
 United States Court of Appeals, Sixth Circuit.
 April 26, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiff appeals from a judgment of the district court affirming the Secretary's denial of her claim for widow's disability benefits.
 
 
 2
 Following the death in 1984 of her husband of 29 years, the plaintiff filed an application for benefits, claiming disability from systemic lupus erythematosus (SLE). After her claim was denied, she requested a hearing, which was held before an administrative law judge (ALJ) on December 13, 1985. Mrs. Gondek and a medical advisor to the ALJ testified, and extensive medical exhibits were filed in the record.
 
 
 3
 The ALJ found from the medical records that the plaintiff suffered from SLE and Raynaud's phenomena. Nevertheless, the ALJ concluded that the plaintiff was not disabled because her medical records did not establish a condition that satisfied the requirements of an impairment found in the "listings" in Part 404, Subpart P, Appendix 1 of the Secretary's regulations, or any impairment or combination of impairments that is medically equivalent to a listed requirement. On seeking disability benefits a widow must establish the existence of a listed impairment or its equivalent by specific clinical findings. Dorton v. Heckler, 789 F.2d 363, 365 (6th Cir.1986).
 
 
 4
 SLE is a listed impairment. Section 10.04 of Appendix 1 provides:
 
 
 5
 Disseminated lupus erythematosus (established by a positive LE preparation or biopsy or positive ANA test). With frequent exacerbations demonstrating involvement of renal or cardiac or pulmonary or gastrointestinal or central nervous systems.
 
 
 6
 The regulations instruct on how to use the listing of impairments in Appendix 1:
 
 
 7
 (c) How to use the Listing of Impairments. Each section of the Listing of Impairments has a general introduction containing definitions of key concepts used in that section. Certain specific medical findings, some of which are required in establishing a diagnosis or in confirming the existence of an impairment for the purpose of this Listing, are also given in the narrative introduction. If the medical findings needed to support a diagnosis are not given in the introduction or elsewhere in the listing, the diagnosis must still be established on the basis of medically acceptable clinical and laboratory diagnostic techniques. Following the introduction in each section, the required level of severity of impairment is shown under "Category of Impairments" by one or more sets of medical findings. The medical findings consist of symptoms, signs, and laboratory findings.
 
 
 8
 20 C.F.R. Sec. 404.1525(c). Thus, SLE is considered disabling only if the required level of severity is shown; that is, that frequent exacerbations demonstrate the involvement of renal, cardiac, pulmonary, gastrointestinal, or central nervous systems. The level of severity is determined from medical findings consisting of "symptoms, signs, and laboratory findings."
 
 
 9
 The plaintiff's treating physician, Dr. Huxol, diagnosed SLE in 1979 and the Mayo Clinic confirmed the diagnosis following Mrs. Gondek's 12-day stay at the clinic. The only issue, then, relates to the severity of the impairment. Following plaintiff's hospitalization in July 1984, Dr. Huxol found the following conditions: SLE, hypertension, obstructive pulmonary disease, and generalized osteoarthritis secondary to SLE. At that time, and on a visit ten days later, Mrs. Gondek complained of severe headaches. A CAT scan was normal and the headaches subsided following a change of medication.
 
 
 10
 In February 1985 the plaintiff was evaluated by Dr. Lerner, an internist. In addition to SLE, hypertension and arthritis, Dr. Lerner diagnosed Raynaud's phenomena, which is defined as intermittent bilateral attacks of ischemia (localized tissue anemia due to obstruction of the inflow of arterial blood) of the fingers and toes. Dr. Lerner also found that Mrs. Gondek suffered from chronic photosensitivity and had a skin rash on her face, arms and legs. As Dr. Huxol had earlier, Dr. Lerner advised the plaintiff to avoid excessive exposure to the sun. On several occasions Dr. Huxol treated the plaintiff for ulcers on her toes, which he concluded were secondary to poor circulation.
 
 
 11
 After moving from Michigan to Georgia, Mrs. Gondek was seen by Dr. Kumar on May 1, 1985. She had rashes on her face, which Dr. Kumar found to be erythematosus rashes, typical of lupus. The doctor also noted that the plaintiff weighed only eighty-four pounds and that her feet were very cold to touch. In his final report prior to the administrative hearing Dr. Huxol stated that, in addition to SLE, Mrs. Gondek suffered from hypertension and "obstructive pulmonary disease with significant emphysema." Mrs. Gondek was a fairly heavy smoker at the time. Dr. Huxol stated that she should have no exposure to the sun, could not engage in any prolonged walking or standing, and that minimal lifting of greater than seven pounds caused excessive fatigue and often resulted in joint discomfort.
 
 
 12
 The ALJ referred to the reports of Dr. Huxol, the Mayo Clinic, Dr. Lerner, and Dr. Kumar, but appears to have based his decision primarily on the testimony of Dr. Bates, the medical advisor. Dr. Bates did not examine Mrs. Gondek, but based his opinion on the medical exhibits. He concluded that Mrs. Gondek's impairment is listed in Section 10.04, but that it "does not meet the Secretary's requirement for severity." On cross-examination, Dr. Bates explained that he understood the regulation to require a claimant with SLE to have "either kidney impairment, heart impairment, lung impairment, gastrointestinal impairment or central nervous impairment." He found no evidence that she has any of these. As the plaintiff points out, Section 10.04 requires the "involvement, not the impairment," of one or more of the listed systems. The listed impairment is SLE, and it is considered disabling if symptoms, signs or laboratory findings show such an involvement. The district court rejected the plaintiff's argument that Dr. Bates and the ALJ misconstrued the severity requirement. The court found that "impairment" is a generic term in the Secretary's regulations that means only a worsening of a condition. Any bodily system involved in frequent exacerbations would be impaired. There was no proof of frequent exacerbations of the plaintiff's SLE or a significant involvement or impairment of any of the listed bodily systems.
 
 
 13
 On the basis of this record we must find that the decision of the Secretary, affirmed by the district court, is supported by substantial evidence. Although the ALJ relied heavily on the opinion of the medical advisor, there was no significant conflict between his opinion and that of the treating and examining physicians. All agreed that Mrs. Gondek has SLE and only Dr. Bates specifically addressed the severity requirement of the listing. However, Mrs. Gondek is now fifty-six years old and has an incurable disease with some manifestations that several bodily systems may be affected. If her condition should worsen with frequent exacerbations that indicate involvement of one or more of the listed bodily systems, Mrs. Gondek must be permitted to refile and pursue her claim for widow's disability benefits.
 
 
 14
 The judgment of the district court is affirmed.